

## NUMBER 13-08-00360-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**JULIAN MALDONADO,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                 **Appellee.**

### On appeal from the 36th District Court of
### San Patricio County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Garza
### Memorandum Opinion by Justice Yañez

A jury convicted appellant, Julian Maldonado, of eight counts of aggravated sexual assault of a child and one count of indecency with a child.[1]  Appellant was sentenced to twenty-five years' confinement for each offense to run concurrently.  By eight issues,

---

[1] *See* TEX. PENAL CODE ANN. §§ 21.11, 22.021 (Vernon Supp. 2009).

appellant contends: (1) that his trial counsel provided ineffective assistance; (2) there is a "material fatal variance" between the allegations in the indictment and the proof at trial; and (3) the evidence is legally and factually insufficient (issues 3-8). We affirm.

## I. THE EVIDENCE

At trial, Lisa Marie Molina, appellant's daughter, testified on behalf of the State that she has four biological children, including two daughters, A.M., who was eight, and S.M., who was five, and two nieces of whom she has custody, M.M., who was seven ("M.M.7") and M.M., who was five ("M.M.5").[2] Lisa testified that in 2006, appellant began living with her family at their home in Taft, Texas. Lisa stated that on June 4, 2007, she had a conversation with M.M.5 and M.M.7 about appellant, their grandfather. According to Lisa, she was in her bedroom with M.M.5 when M.M.7 gestured for M.M.5 to leave the bedroom. Lisa stated that she asked the children where they were going, and M.M.5 "said [']*she [M.M.7] just probably wants to touch me again*.[']" Lisa stated she became concerned, and so she asked M.M.5 to explain what she meant, and M.M.5 said, while touching her "back part," "[']*yeah, she* [M.M.7] *want to touch me here*.[']" Lisa then asked M.M.7 what was going on, and eventually M.M.7 told Lisa that appellant "would set her on top of him while she was naked and put her—his private part in her private part in the front and in the back." Lisa also stated that M.M.7 told her that appellant put his private part in M.M.7's mouth and that on one occasion, appellant "peed in [M.M.7's] mouth but that it wasn't yellow, that it was white." M.M.7 told Lisa that "after [appellant] finishes with her then he also got [Lisa's] oldest daughter [A.M.] . . . . So she said after he finishes with me, [M]om, he gets [A.M.]

[2] In the indictment each child is referred to as M.M. However, for clarity we will include the children's ages when we refer to each child—M.M.7 and M.M.5.

He does the same to her."[3]

After M.M.7 told Lisa about those incidences, Lisa called her husband who was on a fishing trip with the other children and asked him to bring them home. Lisa testified that when they arrived, she asked A.M. if there was "anything" she wanted to tell Lisa, and A.M. said, "No." M.M.7 then told A.M., "[']*you don't have to lie no more. You don't have to be scared. I already told her everything that [appellant] has been doing to us.*[']" According to Lisa, A.M. started crying and told her that appellant put his private part in her private part and in her mouth. A.M. stated that appellant told her not to tell anyone and when she would tell him to stop, appellant would cover her mouth.

Lisa testified that she talked to M.M.5 about what appellant did to her and that M.M.5 told her that appellant put his private part in her back part and in her mouth. Lisa stated that M.M.5 told her that appellant "would lay her down on the bed and spread her legs open and lick her." According to Lisa, S.M. told her that appellant would "touch her with his hand and lick her." Lisa called the police.

Ernie Soliz, a deputy sheriff, testified on behalf of the State that on June 4, 2007, he went to Lisa's residence. When Deputy Soliz arrived at the residence, he was "directed" to a bedroom where he encountered Lisa, who was crying. A.M. and M.M.7 were also in the room crying. When Deputy Soliz asked A.M. and M.M.7 what had happened, "each said that [appellant] . . . had stuck his penis in their rear end portion, which is their anus, and they both motioned like this (indicating)." Deputy Soliz stated that he asked the girls if they were referring to appellant's penis, which he said they called "the

---

[3] Lisa testified that M.M.5 and M.M.7 call her "mom."

thing," and that both girls said "yes." Deputy Soliz gave Lisa a case number and told her to take the children to Driscoll Children's Hospital and request a sexual assault examination kit.

Elizabeth Andelman, a forensic nurse examiner with Driscoll Children's Hospital, testified that she examined M.M.7, M.M.5, and A.M. on June 4, 2007. Andelman testified that as part of her examination of A.M., M.M.5, and M.M.7, she acquired a history for purposes of diagnosis and treatment, wherein she documented the children's "exact words."[4] Andelman stated that she did not note any trauma to M.M.5, M.M.7, or A.M.

Andelman stated she documented the following from A.M.'s history:

[appellant] ["]*takes us into his room and closes the door. He takes off my pants and picks me up. He puts his middle part in my back*.["] Patient indicates butt by pointing. ["]*He does mine first then* [M.M.5]. *He puts his middle in my mouth and* [M.M.5's] *mouth. He puts his middle in my middle*.["] Patient indicates female sexual organ by pointing. ["]*He said for me to don't talk to my mom about it*.["]

Andelman stated that she acquired the following history from M.M.5: appellant "[']*sticks his hand inside*.['] Patient indicates female sexual organ by pointing. [']*He does stuff to us. He holds my legs—legs open and kisses me here*.['] Patient indicates female sexual organ by pointing. [']*He always tries to do stuff to all of us*.[']" Andelman testified she acquired the following history from M.M.7: appellant "[']*put his thing in here*.['] Patient indicates female sexual organ by pointing. [']*He picks us up and puts it in our butt. He tells us to suck his thing, too. He said don't tell anyone. He does it to me and* [A.M.] *and* [M.M.5.][']"

---

[4] The trial court admitted those documents from Driscoll Children's Hospital pertaining to medical examinations of M.M.7, M.M.5, and A.M. performed on June 4, 2007 by Andelman as State's Exhibits 1, 2, and 3 respectively.

4

M.M.5 testified that appellant had hurt her. According to M.M.5, appellant put his "middle" in her "middle" and "in" her back. M.M. used a doll to indicate what part of her body she called her "middle" and her "back." M.M.5 stated that when appellant put his "middle" in her "back," it hurt, and it "[felt] bad."

M.M.7 testified that appellant hurt her with his "thing." M.M.7 stated that appellant put his "thing" in her mouth and in her "middle." M.M.7 stated that appellant told her that his "thing" tasted like a pickle and that when she tasted appellant's "pickle" she "threw up" because "pee" went into her mouth. According to M.M.7, appellant told her not to tell anyone what he was doing. The State asked M.M.7, "[D]id your grandpa [appellant] ever have his middle part touch your back part here?", and M.M.7 replied, "Yes." When asked what that felt like, M.M.7 said, "Like it was hurting bad."

On cross-examination, M.M.7 stated that S.M. told her that she was "just going to tell them, that he only touched [her]." M.M.7 reiterated that appellant hurt her "bad." S.M. testified that appellant touched her "middle" when she was four.

A.M. testified that appellant "hurt" her. When asked to show on a doll what part of the body he hurt, A.M. stated, "[t]he front" and "[o]n the back." The State asked A.M. to point out on a doll the part of appellant's body that touched A.M.'s "front part."[5] A.M. complied and stated that he also put it in her mouth. When the State asked if appellant also put it in her front part, A.M. replied, "Yes." When asked if appellant put his body part in her back part, A.M. moved her head up and down. The State then asked, "Did that go on the inside or stay on the outside?", A.M. responded, "A little bit on the inside" and that

---

[5] There is nothing in the record describing what body part A.M. pointed to on the doll.

5

it "hurted." The State asked, "Now, you said that your grandpa put his front part in your mouth. You remember that?" A.M. moved her head up and down and then stated that "[i]t just felt nasty" and that she felt like throwing up. A.M. testified that appellant told her not to tell anyone what he was doing.[6]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

By his first issue, appellant contends that his trial counsel rendered ineffective assistance. Specifically, appellant alleges, without citation to authority, that Deputy Soliz's and Andelman's testimony consisted of "inadmissible hearsay evidence" to which trial counsel failed to object. The State responds that because the complained-of testimony falls within exceptions to the hearsay rule, trial counsel's failure to object was arguably

---

[6] Appellant was charged with eleven counts of various offenses; however, the State abandoned count six of the indictment, and the jury acquitted appellant of count eleven—indecency with a child. The jury convicted appellant of the following: (1) count one—aggravated sexual assault of a child by "intentionally or knowingly caus[ing] the penetration of the sexual organ of [M.M.5] , a child who was then and there younger than 14 years of age, and not the spouse of [appellant] by the [appellant's] fingers . . . ."; (2) count two—aggravated assault of a child by "intentionally or knowingly caus[ing] the mouth of [appellant] to contact the sexual organ of [M.M.5], a child who was then and there younger than 14 years of age, and not the spouse of [appellant] . . . ."; (3) count three—aggravated sexual assault of a child by "intentionally or knowingly caus[ing] the penetration of the anus of [M.M.5], a child who was then and there younger than 14 years of age, and not the spouse of [appellant] by the [appellant's] sexual organ . . . ."; (4) count four—indecency with a child "with the intent to arouse or gratify the sexual desire of [appellant] by touching the sexual organ of [M.M.7], a child younger than seventeen (17) years and not the spouse of the defendant"; (5) count five—aggravated sexual assault of a child by "intentionally or knowingly caus[ing] the sexual organ of [appellant] to contact the anus of [M.M.7] who was then and there younger than 14 years of age, and not the spouse of [appellant] . . . ."; (6) count seven—aggravated sexual assault of a child by "intentionally and knowingly caus[ing] the sexual organ of [appellant] to contact the sexual organ of [M.M.7], who was then and there younger than 14 years of age, and not the spouse of [appellant] . . . ."; (7) count eight—aggravated sexual assault of a child by " intentionally and knowingly caus[ing] the sexual organ of [appellant] to contact the anus of A.M., a child who was then and there younger than 14 years of age, and not the spouse of [appellant] . . . ."; (8) count nine—aggravated sexual assault of a child by "intentionally or knowingly caus[ing] the penetration of the mouth of A.M., a child who was then and there younger than 14 years of age, and not the spouse of [appellant] . . . ."; (9) count ten—aggravated sexual assault of a child by "intentionally or knowingly caus[ing] the sexual organ of [appellant] to contact the sexual organ of A.M., a child who was then and there younger than 14 years of age, and not the spouse of [appellant] . . . ."

6

based on a reasonable trial strategy.[7]

## A. Standard of Review and Applicable Law

Ineffective assistance of counsel claims are evaluated under the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*.[8] The *Strickland* test requires the appellant to show that counsel's performance was deficient, or in other words, that counsel's assistance fell below an objective standard of reasonableness.[9] Assuming appellant has demonstrated deficient assistance, he must then show that there is a reasonable probability that, but for counsel's errors, the result would have been different.[10] In determining the validity of appellant's claim of ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight."[11]

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence.[12] Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that

---

[7] *See* TEX. R. EVID. 803 ("The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . (2) Excited Utterance.—A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. . . . (4) Statements for Purposes of Medical Diagnosis or Treatment.—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment").

[8] *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[9] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 687.

[10] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694.

[11] *Thompson*, 9 S.W.3d at 813.

[12] *Id.*

7

his actions could be considered sound trial strategy.[13] A reviewing court will not second-guess legitimate tactical decisions made by trial counsel.[14] Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions.[15]

## B. Analysis

An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.[16] Here, the record is silent regarding trial counsel's reason for not objecting to the complained-of testimony. Therefore, appellant has not overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy.[17] Furthermore, appellant does not contend with proper citation to authority and a clear and concise argument that there is a reasonable probability that but for trial counsel's alleged errors, the result would have been different.[18] Therefore, appellant has not met his burden to prove ineffective assistance of counsel by a

---

[13] *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.).

[14] *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate . . . .").

[15] *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851.

[16] *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 (setting out that "in the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*"); *see Jackson v. State*, 877 S.W.2d 768, 771-72 (Tex. Crim. App. 1994) (en banc) (stating that "we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment" and that "[d]ue to the lack of evidence in the record concerning trial counsel's reasons" for the alleged ineffectiveness, the court was "unable to conclude that appellant's trial counsel's performance was deficient") (internal quotations omitted).

[17] *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851.

[18] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694; see also Tex. R. App. P. 38.1(i).

8

preponderance of the evidence.[19]   We overrule appellant's first issue.[20]

### III. Variance In the Indictment

By his second issue, appellant contends that he was "denied due process of law" because there was "a material fatal variance between the allegations in the indictment and the proof at trial."  Specifically, appellant argues that because the State used a pseudonym for each child in the indictment—their initials—there "is not a shred of evidence in the record that [the children who testified at trial] are the same person(s) named in the indictment."[21]

"A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial."[22]   Under the fatal variance doctrine, a variance is fatal only if it is material and the defendant's substantial rights have been prejudiced.[23] "When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment

---

[19] *Thompson*, 9 S.W.3d at 813.

[20] We note that appellant generally asserts that "[t]rial counsel's deficient performance, falling well below and [sic] acceptable standard totally undermines the confidence that the jury reached a proper and just verdict"; however, he does not provide a clear and concise argument with citation to authority for this assertion.  Therefore, he has waived it.  *See* TEX. R. APP. P. 38.1(i).

[21] We note that article 57.02 of the Texas Code of Criminal Procedure allows a victim of a sexual assault to "choose a pseudonym to be used instead of the victim's name to designate the victim in all public files and records concerning the offense, including police summary reports, press releases, and records of judicial proceedings."  TEX. CODE CRIM. PROC. ANN. art. 57.02(b) (Vernon Supp. 2009 ).  Article 57.02 defines "pseudonym" as "a set of initials or a fictitious name chosen by the a victim to designate the victim in all public files and records concerning the offense, including police summary reports, press releases, and records of judicial proceedings."  *Id.* art. 57.01 (Vernon 2006).

[22] *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001).

[23] *Id.* at 257.

would subject the defendant to the risk of being prosecuted later for the same crime."[24]  A variance is immaterial if it does not prejudice a defendant's substantial rights.[25]  "The object of the doctrine of variance between allegations of an indictment is to avoid surprise, and for such variance to be material it must be such as to mislead the party to his prejudice."[26]

Appellant asserts that there is nothing in the record establishing that the children named in the indictment were the children who testified at trial.  However, before voir dire began and in open court, the following colloquy between appellant and his defense counsel occurred:

[Defense Counsel]:  Because you [appellant] did not accept the plea bargain they were going to reindict you and put in your prior conviction.  Do you understand that?

[Appellant]:  He did tell me that.

[Defense Counsel]:  And the four children that we are talking about, it was [stated children's legal names].  And you had advised me that those children were saying lies.

[Appellant]:  Well, they checked them.  They found nothing.

[Defense Counsel]:  Is that correct?

[Appellant]:  I haven't done anything.  They checked them.  They didn't find anything.

[Defense Counsel]:  No.  What I'm asking is do you understand you're saying what the children said were lies?

[Appellant]:  Yes, they were lying.  They don't have anything.

---

[24] *Id.*

[25] *Id.* at 247-48.

[26] *Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995) (en banc) (quoting *Plessinger v. State*, 536 S.W.2d 380 (Tex. Crim. App. 1976)) (internal quotations omitted).

On appeal, appellant does not claim, nor could he, that he did not have notice of the identity of the children named in the indictment or that he did not have notice of the charges against him.[27] Instead, appellant argues that there is no evidence that the children who testified at his trial were those named in the indictment under the pseudonyms. However, appellant acknowledged that the children named by his trial counsel were the same children who were accusing him of the alleged crimes stated in the indictment. Furthermore, the children were appellant's grandchildren, and appellant lived in the same home with those children.[28] Moreover, at trial, appellant never objected that he was unaware of the victims' legal names or that he was unable to prepare an adequate defense due to the use of the pseudonyms in the indictment.[29] Therefore, any variance between the indictment and the proof offered at trial did not operate to appellant's surprise or prejudice his rights.[30] In other words, any variance in this case was immaterial.

Furthermore, "the fatal variance doctrine is inapplicable to pseudonym cases so long as the defendant's due process right to notice is satisfied."[31] Appellant did not object at trial that his due process rights to proper notice were violated.[32] Moreover, appellant does

---

[27] *See Gollihar* , 46 S.W.3d at 257.

[28] *See Greeno v. State*, 46 S.W.3d 409, 413 (Tex. App.–Houston [14th Dist.] 2001, no pet.) (concluding that the use of pseudonyms in the indictment was not a material variance between the indictment and the proof offered at trial and did not operate to the appellant's surprise or prejudice his rights because the victims were appellant's own children and in his pretrial motions, appellant specifically referred to the victims by their legal names).

[29] *See Washington v. State*, 59 S.W.3d 260, 263-64 (Tex. App.–Texarkana 2001, pet. ref'd).

[30] *See Stevens*, 891 S.W.2d at 650.

[31] *Id.* at 651.

[32] *See Rogers v. State*, 640 S.W.2d 248, 265 (Tex. Crim. App. 1982) (op. on second reh'g) (holding due process claim waived on appeal because no objection made at revocation hearing).

11

not claim that he did not have actual notice of the complainants' identities or that he was not given proper notice of the charges against him.[33]  We overrule appellant's second issue.

## IV. SUFFICIENCY OF THE EVIDENCE

By his third through eighth issues, appellant challenges the legal and factual sufficiency of the evidence supporting the judgment.  Specifically, appellant argues that the evidence is insufficient because the State did not prove:  (1) that the children listed under pseudonyms in the indictment were the same children that testified at trial; (2) that appellant touched M.M.5's sexual organ with his fingers (issues three and four); (3) that appellant caused his mouth to touch M.M.5's sexual organ (issues three and four); (4) that appellant used his sexual organ to penetrate M.M.5's anus (issues three and four); (5) what part of appellant's body came into contact with M.M.7's body and A.M.'s body (issues five and six) ; and (6) what part of A.M.'s body appellant allegedly contacted (issues seven and eight).

### A.  Standard of Review and Applicable Law

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found

---

[33] *See Washington*, 59 S.W.3d at 263 (stating that lack of surprise can be inferred from a silent record because, if a victim's name is not properly disclosed, the defendant would have protested); *see also Gollihar*, 46 S.W.3d at 258 (noting that there was no evidence in the record that the defendant did not know which go-cart the State alleged he stole or that the defendant was misled by the allegations or the proof at trial when the State proved that the defendant stole a go-cart with a different model number than alleged in the indictment); *Tutor v. State*, No. 14-99-00652-CR, 2000 Tex. App. LEXIS 2103, at *19 (Tex. App.–Houston [14th Dist.] Mar. 30, 2000, pet. ref'd) (concluding that the appellant provided nothing to show that his right to notice was not satisfied or otherwise violated because the appellant knew the identity of the complainant).

the essential elements of the crime beyond a reasonable doubt.[34] We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact.[35] Instead, we consider whether the jury reached a rational decision.[36]

In a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence.[37] This Court will not reverse the jury's verdict unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict.[38]

## B. Analysis

As sub-issues to his third, fourth, fifth, seventh, and eighth issues, appellant argues that the evidence is insufficient to sustain his conviction on all counts because the State did not present evidence at trial that each child that testified used a particular pseudonym in the indictment. It appears that appellant is claiming that the evidence is insufficient due to the variance in the indictment and the proof presented at trial. However, "[a]n immaterial variance is disregarded in a sufficiency of the evidence review."[39] Therefore, appellant's claim has no merit because we have already concluded that the variance in this case is

---

[34] *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004).

[35] *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).

[36] *Beckham*, 29 S.W.3d at 151.

[37] *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

[38] *Id.* at 417.

[39] *Gollihar*, 46 S.W.3d at 258.

13

immaterial.[40]  Accordingly, we overrule appellant's sub-issues.

Next, by his third and fourth issues, appellant contends that the evidence is legally and factually insufficient to support the jury's findings that he used his fingers to penetrate M.M.5's sexual organ, that he caused his mouth to contact M.M.5's sexual organ, and that he used his sexual organ to penetrate M.M.5's anus.  Appellant points out that M.M.5 "testified that [he] hurt her 'middle'; that he touched her with his 'middle' in her [']middle'; that he touched her with 'these' (nothing in the record to identify what 'these' are); and touched her in her back."  Appellant argues, "The[re] is nothing in the record that establishes what the 'middle' is . . . [or] what the 'back' is."  Appellant also points to the record wherein the State used dolls to question M.M.5 concerning what happened stating, "The record is completely silent as to when the child pointed to the doll or a part of the doll, specifically what part of the doll's anatomy the witness was referring to."

M.M.5 testified that appellant had hurt her when appellant put his "middle" in her back and that it felt bad.  She also stated that appellant put his "middle" in her "middle." Although appellant is correct that the record does not reveal what part of the dolls M.M.5 pointed to while testifying, the jury was able to observe her actions.  In addition to M.M.5's testimony, the jury also heard Andelman's testimony that M.M.5 pointed to her female sexual organ and stated that appellant "sticks his hand inside" and that appellant held her "legs open and kisse[d]" her there.  Lisa testified that M.M.5 told her that appellant put his private part in her back part and in her mouth and that appellant "would lay her down on the bed and spread her legs open and lick her."  Although the child did not specifically state

---

[40] *See id.*

that the "middle" was appellant's sexual organ, a child is not expected to testify with the same clarity or precision as an adult and here, the jury heard testimony from the child while she used a doll to demonstrate the parts of the body she was describing.[41]

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant used his fingers to penetrate M.M.5's sexual organ (count one), that he caused his mouth to contact M.M.5's sexual organ (count two), and that he used his sexual organ to penetrate M.M.5's anus (count three).[42] Furthermore, viewing the evidence in a neutral light, we cannot conclude that the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence.[43] Therefore, the evidence is legally and factually sufficient. We overrule appellant's third and fourth issues.

By his fifth and sixth issues, appellant contends that the evidence is legally and factually insufficient to support his "conviction for Counts 5, and 7 of the indictment." Appellant argues that "the State failed to put any evidence into the record that would establish and demonstrate what part of the doll the witness was referring to, i[.]e[.,] the chest area, or the back, or the limbs, or whatever" and that "the record is completely silent

---

[41] *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc); *O'Hara v. State*, 837 S.W.2d 139, 142 (Tex. App.–Austin 1992, pet. ref'd) (recognizing that when "examining the testimony of a child, the courts have kept in mind the child's lack of technical knowledge in accurately describing the parts of the body") (citing *Clark v. State*, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977); *Chase v. State*, 750 S.W.2d 41, 44 (Tex. App.–Fort Worth 1988, pet. ref'd); *Bryant v. State*, 685 S.W.2d 472, 474 (Tex. App.–Fort Worth 1985, pet. ref'd)).

[42] *See Hooper*, 214 S.W.3d at 13; *Escamilla*, 143 S.W.3d at 817.

[43] *See Watson*, 204 S.W.3d at 414-15.

as to what part of [his] body came into contact with what part of the witnesses's body."[44]

M.M.7 testified that appellant put his "thing" in her "middle" and in her mouth causing her to vomit because "pee" went into her mouth. Deputy Soliz testified that M.M.7 told him she called appellant's penis "the thing." M.M.7 stated that appellant hurt her "bad" when his "middle" touched her "back part." Andelman testified that M.M.7 told her that appellant put his "thing" in her "butt" and in her female sexual organ. Lisa stated that M.M.7 told her that appellant put his private part in M.M.7's mouth, and that he "peed" a white substance into M.M.7's mouth. Lisa testified that M.M.7 stated that when she was naked, appellant also put his private part in her private part and in the "back." The evidence presented showed that appellant put his "middle," "thing" or "private part" in: (1) M.M.7's mouth and "peed" a white liquid; (2) in her "back" or "butt"; and (3) in her female sexual organ or "private part."[45]

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant contacted M.M.7's anus with his sexual organ (count 5) and that appellant contacted M.M.7's sexual organ with his sexual organ (count 7).[46] Furthermore, viewing the evidence in a neutral light, we cannot conclude that the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the

---

[44] In his sixth issue, appellant states, "No rationale [sic] jury could have found the essential elements of Counts 4, 5 and 7 of the indictment beyond a reasonable doubt." Appellant neither provides citation to authority nor a concise argument supporting his assertion regarding count four of the indictment. Therefore, to the extent that appellant challenges the jury's verdict as to count four, he has waived that issue. *See* TEX. R. APP. P. 38.1(i).

[45] *See Villalon*, 791 S.W.2d at 134; *O'Hara*, 837 S.W.2d at 142.

[46] *See Hooper*, 214 S.W.3d at 13; *Escamilla*, 143 S.W.3d at 817.

16

evidence.[47]   Therefore, the evidence is legally and factually sufficient.   We overrule appellant's fifth and sixth issues.

By his seventh and eighth issues, appellant contends that the evidence is legally and factually insufficient to support the jury's findings that he contacted A.M.'s anus with his sexual organ, that his sexual organ penetrated A.M.'s mouth, and that his sexual organ penetrated A.M.'s sexual organ.  Appellant argues that "there is nothing in the record to establish what the 'middle' or 'back' is," that there is no evidence "as to what Appellant put in the witness's mouth," and that the "State did not establish what part of the doll the witness was pointing to or referring to."  Appellant urges that this Court may not "indulge in speculation when the record was not developed by the State."

Again appellant is correct that the record does not show what part of the dolls A.M. pointed to when she testified that he "hurt" her "front" and "back."  However, the jury saw the dolls and witnessed A.M.'s actions.  Moreover, Andelman stated that when A.M. used the term "middle," she pointed to her female sexual organ, and when A.M. used the term "back," she pointed to her "butt."  A.M. stated that appellant put his body part in her mouth and that it "felt nasty" and that she felt like vomiting.  When the State asked A.M. if she remembered stating that appellant put his "front part" in her mouth, she replied by moving her head up and down.  A.M. agreed that appellant put his body part in her "front part" and her "back part."  And when the State asked, "Did that go on the inside or stay on the outside?", A.M. responded, "A little bit on the inside" and that it "hurted."  Lisa testified that A.M. told her that appellant put his private part in her private part and in her mouth.

---

[47] *See Watson*, 204 S.W.3d at 414-15.

Andelman stated that when she took A.M.'s medical history, A.M. indicated that appellant had put his "middle" in her "butt," in her mouth, and in her sexual organ. The evidence presented showed that appellant put his "front part," "middle" or "private part" in A.M.'s mouth, "private part" or "middle" or female sexual organ, and "butt."[48]

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant contacted A.M.'s anus with his sexual organ, that his sexual organ penetrated A.M.'s mouth, and that his sexual organ penetrated A.M.'s sexual organ.[49] Furthermore, viewing the evidence in a neutral light, we cannot conclude that the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence.[50] Therefore, the evidence is legally and factually sufficient. We overrule appellant's seventh and eighth issues.

## V. Conclusion

Having overruled appellant's eight issues, we affirm the trial court's judgment.

Do not publish
SEE TEX. R. APP. P. 47.2(b).

LINDA REYNA YAÑEZ,
Justice

Delivered and filed the
17th day of June, 2010

---

[48] *See Villalon*, 791 S.W.2d at 134; *O'Hara*, 837 S.W.2d at 142.

[49] *See Hooper*, 214 S.W.3d at 13; *Escamilla*, 143 S.W.3d at 817.

[50] *See Watson*, 204 S.W.3d at 414-15.